## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DEBRA POPE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | No. 06-2130-KHV |
| QUIVIRA COUNCIL, BOY SCOUTS OF ) | |
| AMERICA, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

### MEMORANDUM AND ORDER

Debra Pope sues Quivira Council, Boy Scouts of America ("Quivira Council") for employment discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.[1] This matter comes before the Court on Defendant's Motion For Summary Judgment (Doc. #47) filed October 4, 2007. For reasons stated below, the Court sustains defendant's motion.

**I.   Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome

---

[1] Plaintiff also asserts claims for retaliatory harassment under Title VII and retaliatory discharge in violation of Kansas public law. See Pretrial Order (Doc. #46) filed October 2, 2007 at 7. In response to defendant's motion for summary judgment, however, she has abandoned those claims. See Plaintiff's Response To Defendant's Motion For Summary Judgment ("Plaintiff's Response") (Doc. #52) filed November 13, 2007 at 2 n.1.

of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [she] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on her pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the [party] opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**II.     Facts**

The relevant facts are undisputed.

Boy Scouts of America has chartered defendant to carry out scouting programs in a specific geographic area. Defendant has four categories of employees: (1) professional employees, (2) professional trainees, (3) administrative staff, and (4) part-time employees. Professional employees receive a commission from Boy Scouts of America. To qualify, an applicant must (1) receive a score of "A" or "B" on the SRI Index;[2] (2) have a bachelor's degree from an accredited college or university; and (3) satisfactorily complete the professional development level 1 ("PDL-I") course.[3]

Defendant currently has eight districts: Cheyenne District, High Plains District, Lakota District, Mohawk District, Osage Nation District, Santa Fe District, South Winds District and White Buffalo District. Each district offers the same programs and the district executives are professional employees, <u>i.e.</u> commissioned positions.[4] During plaintiff's employment, defendant also had a Pathfinder District.

In March of 2003, defendant hired plaintiff, an African American, to work part time as a

---

[2]    The SRI index is an assessment tool designed to measure a candidate's fit for a professional district executive position. A score of "A" or "B" is considered passing. A score of "C" is considered not passing.

[3]    Boy Scouts of America has three levels of PDL classes. Typically, all employees who aspire to be commissioned attend the PDL-1 course.

[4]    Defendant provides the following programs: (1) cub scouting for boys aged seven to ten years old; (2) boy scouting for boys aged ten to 18; (3) venturing, a youth development program for young men and women aged 14 to 20; and (4) learning for life, which offers programs to support schools and community-based organizations to prepare youth to successfully handle society and enhance their self-confidence, motivation, and self-esteem.

3

program specialist in the outreach program in the Pathfinder District at $10 an hour.[5]

In February of 2004, plaintiff became full-time outreach director, earning an annual salary of $33,000.  Fred Meijering, scout executive, wanted to make plaintiff district executive for the Pathfinder District.[6]  Because it was a commissioned position, plaintiff had to take the SRI index and receive a score of "A" or "B."

In February of 2004, plaintiff took the SRI index and received a score of "C."  Because plaintiff did not score an "A" or "B," defendant could not hire her into a commissioned position. Meijering decided to hire plaintiff as a full-time executive for learning for life, a noncommissioned position.

On February 23, 2004, plaintiff became a learning for life executive, earning $33,300 per year.  In this position, plaintiff was responsible for marketing and serving learning for life organizations.  Plaintiff also retained her responsibility for the outreach program in the Pathfinder District.

On September 30, 2004, Meijering and plaintiff met and discussed, inter alia, the fact that defendant could not send plaintiff to PDL training until she passed the SRI index. They also discussed plaintiff's job responsibilities.  Plaintiff stated that she would rather work exclusively with the Pathfinder District and not with learning for life.  Meijering agreed to allow her to work only in the Pathfinder District and retain her status as a full-time employee with the same pay and benefits.

On October 16, 2004, plaintiff became a Pathfinder executive, a noncommissioned position.

---

[5] The outreach program serves inner-city cub scouts, boy scouts, venturers and learning for life.  The record is unclear whether other districts have outreach programs.

[6] The record is unclear whether the Pathfinder District already had a district executive and/or how the position became available.

4

Her salary and job duties remained the same except she was not involved in learning for life or venturing. Defendant hired part-time employees to handle plaintiff's learning for life responsibilities.

On January 10, 2005, defendant raised plaintiff's salary to $35,250 per year.

In January of 2005, plaintiff re-took the SRI index and received a score of "B."

On February 2, 2005, plaintiff completed an application for professional commission. On February 9, 2005, Rick Reeve, director of field services, approved the application and recommended approval by Boy Scouts of America.

On February 16, 2005, plaintiff assumed the duties of district executive for the Pathfinder District, at a yearly salary of $35,250. She was to serve as a professional trainee until she completed the PDL-I course and received her commission.

From April 10 to April 17, 2005, plaintiff took the PDL-1 course. Prior to that, Joe Myers, a professional employee, attended PDL-II training. Myers previously worked in Kansas City and had attended PDL-I training there.

On May 1, 2005, plaintiff became district executive for the Pathfinder District.

In August of 2005, defendant's management team completed the first draft of the budget for 2006. Faced with a $250,000 shortfall, it reduced camp expenses and pay raises and cut money from most programs. Still facing a $50,000 deficit, the management team decided to cut staff. It compared the amount of money which each professional employee brought in with the total costs related to each position. Three professionals operated at a deficit: the director of field service, the Osage Nation District Executive and the Pathfinder District Executive (plaintiff). The management team recommended removing plaintiff, who brought in the least revenue and was responsible for the

5

largest annual deficit. The management team determined that other district executives could absorb plaintiff's duties. As a result of the recommendation, defendant decided to eliminate the Pathfinder District and plaintiff's position.[7]

In September of 2005, defendant moved the junior ROTC program out of the Pathfinder District and into venturing. Defendant hired Alan Lepard, a Caucasian, to work part-time as an executive with venturing for $10 per hour.

On November 30, 2005, defendant informed plaintiff that it was terminating her employment due to budget restrictions. It paid her through December 31, 2005 and reassigned her duties within the organization. Defendant did not hire a replacement employee. At the time of her termination, plaintiff was the only African-American executive-level employee.

In December of 2005, defendant promoted Lepard to professional trainee for the district executive position for the Santa Fe Trails/Mohawk District, at a salary of $33,300. Around the same time, it eliminated Lepard's part-time position in venturing and another part-time position in learning for life.

**III.   Analysis**

Plaintiff claims that because of race, defendant delayed training her and terminated her employment. Defendant seeks summary judgment on all claims. Regarding delayed training, defendant asserts that as a matter of law plaintiff cannot establish a prima facie case of discrimination. Regarding termination, defendant asserts that as a matter of law plaintiff cannot establish a prima facie case or pretext.

---

[7]   The record does not indicate whether other employees worked in the Pathfinder District and, if so, what happened to their jobs.

6

### A.     Delayed Training

With regard to delayed training, it appears that plaintiff claims that defendant delayed her PDL-1 training but gave prompt PDL-II training to Lepard, a Caucasian.[8] Defendant contends that plaintiff cannot establish a prima facie case of discrimination with regard to delayed training. To establish a prima facie case, plaintiff must show (1) that she belongs to a protected class; (2) that she suffered an adverse employment action; and (3) that the challenged action took place under circumstances which give rise to an inference of discrimination. See EEOC v. PVNF, LLC, 487 F.3d 790, 800 (10th Cir. 2007). Defendant contends that plaintiff cannot establish the second element, i.e. plaintiff cannot show that the delay in training constituted an adverse employment action.

Not every perceived indignity rises to the level of an adverse employment action. See Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1222 (10th Cir. 2006). A "mere inconvenience or alteration of job responsibilities" will not suffice. Dick v. Phone Directories Co., 397 F.3d 1256, 1268 (10th Cir. 2005). Only "acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" will rise to the level of an adverse employment

---

[8]     The pretrial order is silent with regard to any such claim. See Pretrial Order (Doc. #46) at 3-5. Nevertheless, defendant asserts that plaintiff complains that a male employee (presumably Lepard) received PDL-II training before she received PDL-I training. See Defendant's Memorandum (Doc. #48) at 21. In response to defendant's motion for summary judgment, plaintiff asserts that "[i]f defendants train Caucasians prior to train [sic] African-Americans, this is discrimination." Plaintiff's Response (Doc. #52) at 10. For purposes of ruling on defendant's summary judgment motion, the Court will assume that plaintiff asserts a claim that defendant delayed her PDL training but gave Lepard prompt PDL training.

action. Id. (quotation omitted).[9] The Court, however, must "liberally interpret" whether an adverse employment action exists and "take a case-by-case approach, examining the unique factors relevant to the situation at hand." Id. (quotation omitted.).

Plaintiff argues that "defendant has failed to present any evidence that a reasonable person would not find a delay in training material." Plaintiff's Response (Doc. #52) at 9. This argument misses the boat. To overcome summary judgment, plaintiff must present evidence which creates a genuine issue of material fact whether the delay in training constituted an adverse employment action. Plaintiff, however, presents no evidence to show that the alleged delay in training had any effect whatsoever on her employment. On this record, she has not created a material fact issue regarding whether the delay in training constituted an adverse employment action. See, e.g., Belgasem v. Water Pik Tech., Inc., 457 F. Supp.2d 1205, 1215 (D. Colo. 2006) (plaintiff could not show adverse action without evidence linking denied training to lack of promotion). Defendant is entitled to summary judgment on this claim.

**B.    Termination**

With regard to the termination of employment, defendant asserts that plaintiff cannot establish a prima facie case or pretext.

**1.    Prima Facie Case**

To establish a prima facie case, plaintiff must show (1) that she belonged to a protected class; (2) that she was qualified for her position; (3) that she was discharged; and (4) that

---

[9] Plaintiff argues that under Burlington N. & Santa Fe Ry. Co. v. White, --- U.S. ----, 126 S. Ct. 2405 (2006), a more lenient standard applies. In Burlington, the United States Supreme Court found that to establish adverse action in the retaliation context, plaintiff need show only that a reasonable employee would have found the action materially adverse. See id. at 2490. The Tenth Circuit, however, has specifically found that Burlington did not modify its jurisprudence regarding discrimination claims. See Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007).

the discharge occurred under circumstances which give rise to an inference of unlawful discrimination.  See Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005).[10]  Defendant challenges the fourth element, i.e. whether plaintiff can show that the discharge occurred under circumstances which give rise to an inference of discrimination.  Courts have identified a variety of circumstances which can give rise to an inference of discriminatory motive, including:

> actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, . . . preferential treatment given to employees outside the protected class, . . .  in a corporate downsizing, the systematic transfer of a discharged employee's duties to other employees . . . or a pattern of recommending the plaintiff for positions for which she is not qualified [or over-qualified] and failure to surface plaintiff's name for positions for which she is well-qualified.  A plaintiff might also rely upon the fact that the defendant, following plaintiff's termination, continued to seek applicants to fill the position, . . . or, more generally, upon the timing or sequence of events leading to plaintiff's termination.

Plotke, 405 F.3d at 1101 (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996)).

Here, plaintiff asserts that the following facts show that the termination occurred under circumstances which suggest discrimination: (1) plaintiff was the only African-American district executive and the only employee whom defendant discharged to save costs; and (2) around the same time that it fired plaintiff, defendant promoted Lepard, a Caucasian, to a district executive position. Although a close call, the Court assumes that these facts, construed in the light most favorable to plaintiff, create a genuine fact issue whether plaintiff can meet her *de minimus* burden to show that

---

[10]  Defendant asserts that plaintiff must show that her job was not eliminated.  See Memorandum In Support Of Defendant's Motion For Summary Judgment (Doc. #48) filed October 4, 2007 at 20 (citing Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999)).  In Plotke, the Tenth Circuit found that showing a job was not eliminated is *one* way in which a plaintiff can establish a prima facie case, but not the *only* way.  See Plotke, 405 F.3d at 1099.  The critical inquiry in all cases is whether the termination occurred under circumstances which give rise to an inference of discrimination.  See id.

the termination occurred under circumstances which give rise to an inference of unlawful discrimination. See Plotke, 405 F.3d at 1101; see also Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1993) (circumstances created inference of discriminatory intent where black employee was only employee to lose job in supposed reduction in force and white employees were treated more favorably).

### 2. Pretext

Defendant contends that it terminated plaintiff's employment for budget reasons. Specifically, defendant asserts that it eliminated plaintiff's position because, of all professional employees, she operated at the largest deficit. Because defendant has articulated a legitimate nondiscriminatory reason for the discharge, the burden shifts to plaintiff to present evidence from which a reasonable jury might concluded that defendant's proffered reason is pretextual, that is, "unworthy of belief." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995)). Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted). While "[t]his burden is not onerous . . . it is also not empty or perfunctory." Id. at 1323-24. A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, i.e. unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff.

See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000). More specifically, evidence of pretext may include "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir.), cert. denied, 528 U.S. 815 (1999).

Plaintiff argues that defendant's explanation is unworthy of credence. Specifically, plaintiff claims that defendant's rationale that it cut plaintiff's job to save costs does not make sense because around the same time, it promoted Lepard from a part-time job to a full-time job, earning a salary similar to plaintiff. See Plaintiff's Response (Doc. #52) at 10. Plaintiff asserts that the fact that defendant hired additional staff at a time when it claims that it needed to reduce staff demonstrates pretext. See id. at 11. The cases which plaintiff cites, however, are distinguishable. See Miller v. Eby Realty Group LLC, 396 F.3d 1105 (10th Cir. 2005);[11] Hallquist v. Local 276, 843 F.2d 18 (1st Cir. 1988).[12] In both cases, defendants claimed that they eliminated plaintiffs' jobs but in fact hired employees in non-protected categories to replace plaintiffs. Here, plaintiff does not dispute that defendant eliminated her job and redistributed her duties within the organization. Plaintiff contends that the mere fact that defendant promoted Lepard to another district executive position shows that its explanation – that it cut her position to save costs – is false. Plaintiff presents no evidence,

---

[11] In Miller, an age discrimination case, defendant told plaintiff that it was eliminating his position, but in fact it replaced him the next day with a younger employee at the same salary. See 396 F.3d at 1112. The Tenth Circuit found this evidence was sufficient to support an inference that the stated reason for the discharge was pretextual. See id.

[12] In Hallquist, the First Circuit affirmed the district court's finding of intentional discrimination (after a bench trial) where defendant fired its only female plumber because of alleged lack of work and soon thereafter hired two new male plumbers. See 843 F.2d at 23-25.

11

however, which shows that defendant did not save costs by eliminating her position. Indeed, plaintiff has not shown that promoting Lepard had a negative effect on the budget. Plaintiff does not claim that Lepard filled a newly-created position, and it therefore appears that he replaced another employee. Also, defendant presumably saved money by eliminating Lepard's part-time position and another part-time position. On this record, plaintiff has not shown a genuine issue of material fact whether defendant's explanation is pretextual. Defendant is entitled to summary judgment on this claim.[13]

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #47) filed October 4, 2007 be and hereby is **SUSTAINED.** The Clerk is directed to enter judgment in favor of defendant on all claims.

Dated this 20th day of December, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

---

[13] The Court rejects plaintiff's claim that under the "inexorable zero" doctrine, she can show pretext because she was the only African-American professional executive and the only employee whom defendant fired to save costs. See Plaintiff's Response (Doc. #52) at 11-12. In Marion v. Slaughter Co., No. 98-6286, 1999 WL 1267015 (10th Cir. Dec. 29, 1999), the Tenth Circuit recognized that "[u]nder certain circumstances an inference of discrimination may sometimes be drawn from statistical evidence that no member of a protected group has ever occupied a particular job or position." Id., 1999 WL 1267015 at *6; see also Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 342 n.23 (1977) (where fine tuning of statistics could not obscure glaring absence of minority drivers, inference of discrimination came from inexorable zero). Here, plaintiff presents no statistical evidence to support her claim.